IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID IGASAKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15-cv-03693 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| ILLINOIS DEPARTMENT OF FINANCIAL | ) |
| AND PROFESSIONAL REGULATIONS and | ) |
| LAURA FORESTER, an individual and as | ) |
| Chief of Medical Prosecutions at the IDFPR, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Igasaki has sued the Illinois Department of Financial and Professional Regulations ("IDFPR") and its Chief of Medical Prosecutions, Laura Forester, alleging that he suffered discrimination based on his race, sex, age, and disability, and that he was retaliated against for complaining about his mistreatment. Before the Court is Defendants' motion for partial dismissal of the amended complaint (Dkt. No. 22), which challenges Igasaki's claims against Forester, his sex discrimination claim, and his *respondeat superior* claim seeking to hold IDFPR responsible for Forester's actions. For the reasons stated below, the motion to dismiss is granted. Igasaki's claims against Forester and his *respondeat superior* claim against the IDFPR are dismissed with prejudice, and his sex discrimination claim is dismissed without prejudice.

## BACKGROUND

As set forth in the amended complaint,[1] Igasaki was a staff attorney for the Medical Prosecutions Unit ("MPU") at the IDFPR, a government agency that regulates Illinois

---

[1] For purposes of deciding the motion, the Court accepts the allegations of the amended complaint as true and draws all permissible inferences in Igasaki's favor. *See, e.g.*, *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

professionals. (Am. Compl. ¶¶ 2, 6. Dkt. No. 19.) The MPU investigates and prosecutes medical doctors for violations of Illinois law. (*Id*. ¶ 6) Igasaki is 62 years old and suffers from gout. (*Id*. ¶¶ 2, 5.) Igasaki was the only homosexual Asian staff attorney in the MPU. (*Id*. ¶ 2.) He worked for the IDFPR for approximately 20 years before he was suspended and subsequently terminated. (*Id*. ¶ 3.) Until his termination, Igasaki had never been disciplined. (*Id*. ¶ 10.)

In 2011, Forester was hired as the IDFPR's new Chief of Medical Prosecutions and became Igasaki's immediate supervisor. (*Id*. ¶ 11.) The first performance review she gave Igasaki was positive. (*Id*. ¶ 12.) In the year following that review, however, Forester found out that Igasaki was a homosexual. (*Id*. ¶ 13.) Shortly thereafter, Forester began to harass him. (*Id*.) The next review she gave Igasaki was, in his words, "extremely bad." (*Id*. ¶ 14.) Forester thereafter set impossible deadlines for Igasaki, humiliated him, gave him a heavy caseload, and assigned him to a small and unaccommodating workstation. (*Id*. ¶¶ 18-21, 25.) She further singled him out for lengthy and probing case reviews. (*Id*. ¶ 23.) Forester also selectively enforced the "No Work Late Policy" against Igasaki, forced him to take involuntary leave after a bedbug issue (that Igasaki claims originated in the IDFPR offices), and tried to force him to falsify his timecards. (*Id*. ¶¶ 28-39.) After filing charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), Igasaki's work environment became even more hostile and he continued to receive poor evaluations. (*Id*. ¶¶ 40-43.) He also received a partial denial of his request for reasonable accommodations for his gout. (*Id*. ¶¶ 45, 48.) Igasaki was ultimately terminated in late March 2015. (*Id*. ¶ 50.)

Igasaki subsequently filed this lawsuit, asserting claims for race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 623(a), and disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq*. He also claims that he was retaliated against for filing charges with the Illinois Department of Human Rights and the EEOC in violation of Title VII. And finally, he asserts a separate claim against the IDFPR seeking to hold it responsible for Forester's conduct based on a theory of *respondeat superior* liability.

## DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id*. at 555. Plaintiffs must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. In addition, "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *Id.* Furthermore, "a party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006).

**I.    Igasaki's Claims Against Forester**

Defendants first argue that all claims against Forester, whether in her individual capacity or her official capacity, should be dismissed. This Court agrees.

Forester cannot be held liable in her individual capacity as Igasaki's supervisor for his claims under the ADA or Title VII—only the IDFPR (his actual employer) can. *Silk v. City of Chicago*, 194 F.3d 788, 797 (7th Cir. 1999). Nor may Forester be held individually liable for Igasaki's claim under the ADEA. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) ("[W]e have suggested that there is no individual liability under the ADEA."); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir. 1995) ("Courts routinely apply arguments regarding individual liability to [the ADA, the ADEA, and Title VII] interchangeably."). Furthermore, Igasaki's claims against Forester in her official capacity and his claims against the IDFPR are redundant; the former are thus properly dismissed. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 772 n.7 (7th Cir. 2006) (affirming the dismissal of a Title VII claim against a defendant in his official capacity as duplicative of the Title VII claim against the actual employer). Accordingly, Igasaki has failed to state a claim against Forester in either her individual or official capacities, and the claims against her are dismissed with prejudice.

**II.    *Respondeat Superior***

Pursuant to 745 ILCS 10/9-102, the Illinois state statute cited by Igasaki in his amended complaint, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." Igasaki has not, however, alleged any tort claims against any employees of an appropriate "local public entity," as the IDFPR is not a "local public entity" within the

meaning of the statute, s*ee* 745 ILCS 10/1-206 (specifying that the definition of local public entities "does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State."), and the only claims against an individual defendant—*i.e.*, Forester—are dismissed for the reasons previously stated. Accordingly, Igasaki has failed to state a claim for *respondeat superior* liability. That claim is dismissed with prejudice as well.

### III. Igasaki's Sex Discrimination Claim

Defendants argue that what Igasaki has characterized as a sex discrimination claim is in actuality a claim for discrimination on the basis of his sexual orientation, and therefore must be dismissed because sexual orientation is not a protected class under Title VII. "[H]arassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 704 (7th Cir. 2000). However, Title VII does protect victims of "sex stereotyping" or "gender stereotyping." *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003).

The question is thus whether Igasaki's claim is based upon his sexual orientation or his gender. Defendants argue that Igasaki's claim is based on his sexual orientation, as his amended complaint "makes it clear that the alleged harassing behavior only began once Defendant Forester allegedly found out that [he] was homosexual." (Def. Br. at 5, Dkt. No. 23.) Igasaki protests that such is not the case because "Defendants began unlawfully discriminating against [him] prior to discovering he was a homosexual and thus the discrimination could not be based on his sexuality." (Pl. Resp. at 1-2, Dkt. No. 25.) He may argue that now, when faced with a motion to dismiss, but that is not what he *plead*. What Igasaki plead in his amended complaint is that

"Forester found out that [he] was a homosexual and ***shortly thereafter*** Forester began to harass Plaintiff." (Am. Compl. ¶ 13, Dkt. No. 19 (emphasis added).) Nowhere in his amended complaint does Igasaki assert that the alleged harassment by Forester began prior to her finding out that he was a homosexual.

Igasaki's allegations that he was criticized for being "too soft" and "not aggressive enough" do not save his claim. Igasaki contends that such criticism evidences sex or gender stereotyping—*i.e.*, discrimination for failing to conform to stereotypical male roles of authority—which amounts to sex discrimination. His amended complaint, however, clearly alleges that he was subjected to those comments only after Forester learned of his sexual orientation. Presumably, neither Igasaki's gender nor his approach to his cases materially changed. (At least, nothing in the amended complaint suggests that to be the case.) Yet, Igasaki does not allege any criticism of his approach to cases until Forester learned of his sexual orientation—in fact, Forester's feedback to Igasaki regarding his work appears to have been positive prior to her learning of his sexual orientation. (*Id.* ¶ 12.) Thus, as alleged, Igasaki's complaints regarding discrimination due to sex stereotyping are more accurately described as complaints about discrimination on the basis of his sexual orientation.

Accordingly, Igasaki has failed to state a claim for sex discrimination, and that claim is dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss (Dkt. No. 22) is granted. Igasaki's claims against Forester and his *respondeat superior* claim against the IDFPR are dismissed with prejudice, while his sex discrimination claim against IDFPR is dismissed without prejudice. Igasaki may seek leave from the Court to re-plead his sex discrimination claim, if he can do so consistent with the obligations of Federal Rule of Civil Procedure 11.

ENTERED:

Dated: January 20, 2016

Andrea R. Wood
United States District Judge